WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karen Weber, | No. CV-20-08019-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Jace Reif, et al., | |
| Defendants. | |

In 2018, Defendant Jace Reif, a Kingman Police Department officer, shot and killed Michael Weber while responding to a report of a potential domestic disturbance. Weber's surviving spouse brings this action under 42 U.S.C. § 1983, alleging that Officer Reif violated Weber's rights under the Fourth Amendment to the United States Constitution by using unreasonable force. At issue is Officer Reif's motion for summary judgment based on qualified immunity. (Doc. 17.) The motion is fully briefed (Docs. 20, 32) and, as explained below, will be granted.[1]

**I. Legal Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material

---

[1] Oral argument is denied because the issues are adequately briefed, and further argument will not help the Court resolve the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**II. Undisputed Facts[2]**

On the night of February 10, 2018, Officer Reif responded to a report of a possible domestic disturbance involving a man and a woman yelling, comments about someone killing someone else, and a gun. Officer Reif responded to the call because he was closest to the location, but he expected another officer would arrive after him. When Officer Reif arrived on the scene, James Smaller, Jr.—the Webers' neighbor and the person who had made the report—directed Officer Reif to the Webers' trailer and told him that a man and a woman lived there and that Smaller had heard someone say "Get away or I'll shoot you."

After directing Smaller back inside his own trailer, Officer Reif knocked on the Webers' door. Without opening the door, Weber responded: "get out of here or I'll shoot you." At least twice, Officer Reif loudly identified himself as a police officer and ordered Weber to come out with his hands up. From inside his trailer, Smaller could hear Officer Reif's commands as well as argumentative muttering from the inside of the Webers' trailer.

Officer Reif called for additional officers and then continued to engage with Weber. Officer Reif positioned himself near a truck, but did not take cover and was otherwise in a wide-open area. He trained his gun, which was mounted with a flashlight, on the trailer door. Weber eventually came out with a gun in his hand, looked at Officer Reif (with the light from Officer Reif's flashlight shining in his face), and shouted "Get out of here!"

---

[2] With one exception discussed later in this order, the relevant facts are undisputed. Most of what Plaintiff characterizes as fact disputes are instead legal arguments about the relevance or materiality of the asserted facts to the qualified immunity inquiry. (Doc. 20 at 9-11.) The Court does not rely on immaterial facts when ruling on a summary judgment motion.

Officer Reif testified that Weber's emergence with a gun scared him. Officer Reif ordered Weber to put his hands up. Weber did not comply. Instead, Weber briefly retreated behind the door of the trailer and then reemerged, gun still in hand. At that moment, Officer Reif fired several shots, killing Weber. The shots were fired approximately seven minutes after Officer Reif first arrived on scene. Officer Reif received training in de-escalation techniques but he did not employ these techniques during his encounter with Weber because he did not consider them appropriate given Weber's demeanor.

The parties' principal disagreement is over the orientation of Weber's gun at the time Officer Reif opened fire. Officer Reif does not claim that Weber pointed the gun at him. Instead, Officer Reif stated that he saw the muzzle of Weber's gun moving toward him. Plaintiff, however, contends that Weber's gun was always aimed toward the ground. Officer Reif's body camera captured the incident and the Court has reviewed that footage. The video clearly shows Weber reemerging from the trailer door with the gun still in his hand, and it does not show Weber pointing his gun at Officer Reif. But, due to poor lighting and some obstruction by Officer Reif's body, the video does not clearly capture the orientation of Weber's gun at the precise moment Officer Reif fired the shots. A jury comparing the body camera footage to Officer Reif's testimony could reasonably credit Officer Reif's testimony that the muzzle of Weber's gun was moving toward him, but a jury also could reasonably accept Plaintiff's interpretation of the footage. For purposes of this order, the Court will view this evidence in the light most favorable to Plaintiff and infer that Weber's gun was aimed at the ground when Officer Reif opened fire.

**III. Analysis**

Officer Reif argues that summary judgment is appropriate because he is entitled to qualified immunity, which protects an officer "from suit when he makes a reasonable mistake of law or fact." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc). "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established as the time." *D.C. v. Wesby*, 138 S.Ct. 577, 589 (2018) (internal

quotation and citation omitted). Because an officer is subject to suit only when both conditions are met, the Court has "discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Lacey*, 693 F.3d at 915 (internal quotation and citation omitted).

Here, given the factual dispute over the orientation of Weber's gun, the Court will assume that a jury could find Officer Reif violated Weber's Fourth Amendment rights. The Court will focus its attention on the second prong of the qualified immunity analysis, under which Plaintiff bears the burden of showing that, at the time of the incident, it was clearly established that Officer Reif's use of lethal force was unreasonable. *See Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017). There need not be a case directly on point, but "existing precedent must have placed the . . . constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation and citation omitted). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590.

Critically, clearly established law must not be defined at a high level of generality. *See Kisela*, 138 S. Ct. at 1152. The "inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal quotation and citation omitted). "[S]pecificity is especially important in the Fourth Amendment context," where it can be "difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation and citation omitted). "Precedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful." *Kisela*, 138 S. Ct. at 1153 (internal quotation and citation omitted). Accordingly, although Plaintiff need not identify a case directly on point, she "must identify a case where an officer acting under similar circumstances as [Officer Reif] was held to have violated the Fourth Amendment." *Sharp*

*v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (emphasis and internal quotation and citation omitted).

Here, Officer Reif was responding to a report of a possible domestic disturbance involving a gun. He had ample reason to believe Weber was armed. He loudly identified himself as a police officer at least twice. Weber threatened to shoot him. Officer Reif commanded Weber to come out with his hands up. Weber did not fully comply with this command. He, instead, came out with a gun in his hand and told Officer Reif to leave. Officer Reif did not take cover, but commanded Weber once again to put his hands up. Weber again did not comply. Instead, he briefly retreated behind the trailer door and remerged with the gun still in his hand, though aimed at the ground, at which point Officer Reif opened fire. Plaintiff has not identified a controlling case or a "robust consensus of cases of persuasive authority," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), in which an officer acting under circumstances like these was found to have employed unconstitutional force. The cases Plaintiff relies upon are materially distinguishable.

Plaintiff relies heavily on *Estate of Lopez by and through Lopez v. Gelhaus*, 871 F.3d 998 (9th Cir. 2017), which involved the lethal police shooting of a thirteen-year-old boy who was seen carrying what appeared to be a gun, but which turned out to be a toy. Plaintiff places great weight on this case because the Ninth Circuit assumed, for purposes of the interlocutory appeal, that the barrel of the toy gun might have incidentally risen as a result of the boy's body motion, but not high enough to pose a threat to the officers. *Id.* at 1008. But in focusing myopically on the similarities in the orientations of the boy's and Weber's weapons, Plaintiff ignores the myriad ways in which *Gelhaus* differs from this case. For example, unlike here, the officers in *Gelhaus* encountered the boy while on routine patrol, not in response to a report of a potentially violent disturbance; the boy did not appear aggressive; the officers received no reports that the boy had used the weapon or expressed an intent to use the weapon; and there were no reports of aggressive or threatening behavior by the boy. *Id.* at 1017-18.

Plaintiff also relies on *George v. Morris*, 736 F.3d 829 (9th Cir. 2013), because it

also concerned a domestic disturbance involving a firearm. When the officers arrived on scene, the suspect's wife informed them that her husband was on the patio with a gun. An officer identified himself as law enforcement and instructed the suspect to show him his hands. *Id.* at 833. As the suspect exited the patio, an officer saw him holding onto a walker with a gun in his hand, at which point the officers shot and killed him. *Id.* But, again, Plaintiff ignores important factual differences, most notably the undisputed fact that, before Officer Reif opened fire, Weber had threatened to shoot him. Indeed, in *George* the Ninth Circuit identified such a threat as a factor that could materially impact the use-of-force analysis: "This is not to say that the Fourth Amendment always requires officers to delay their fire until a suspect turns his weapon on them. If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, *or serious verbal threat* might create an immediate threat." *Id.* at 838 (emphasis added). *George* would not have put Officer Reif on notice that his use of lethal force was clearly unlawful. For a similar reason, Plaintiff's reliance on the First Circuit's decision in *McKenney v. Mangino*, 873 F.3d 75 (1st Cir. 2017) is unavailing. In that case, the suspect did not "utter anything resembling a threat." *Id.* at 78.

Indeed, the problem with Plaintiff's case comes into stark focus with her reliance on *Shannon v. Cty. of Sacramento*, No. 2:15-CV-00967 KJM DB, 2018 WL 3861604 (E.D. Cal. Aug. 14, 2018).[3] There, relying on many of the same authorities as Plaintiff, the district court concluded that, by March 2014, "it was clearly established that deadly force is unjustifiable when the only provocation is holding a gun in a non-threatening position." *Id.* at *8. But, here, holding a gun in a non-threating position was not the only provocation Officer Reif encountered. Instead, Weber had resisted commands and threatened to shoot Officer Reif if he did not leave.

**IV. Conclusion**

The Court does not decide whether Officer Reif's use of lethal force was justified. The Supreme Court has created the defense of qualified immunity, under which Plaintiff

---

[3] As a district court decision, *Shannon* cannot create the type of precedent that clearly establishes a rule of law.

bears the burden of showing that, at the time of the incident, it was clearly established that Officer Reif's use of lethal force was unreasonable. The Court finds that Plaintiff has not met her burden. As of February 2018, neither controlling authority nor a robust consensus of persuasive authority involving similar enough facts clearly established that Officer Reif's conduct crossed the line from acceptable to excessive force. As such, Officer Reif has qualified immunity from suit.

**IT IS ORDERED** that Officer Reif's motion for summary judgment (Doc. 17) is **GRANTED**. All other remaining motions are denied as moot. The Clerk is directed to enter judgment accordingly and terminate this case.

Dated this 22nd day of March, 2021.

Douglas L. Rayes
United States District Judge